UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ABDIGADIR AHMED KHALIF,

        Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; ROBERT ROES 1-3, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; THE CITY OF ST. PAUL,

        Defendants.

Case No. 16cv1237 (JNE/TNL)
ORDER

## I.    INTRODUCTION

Plaintiff Abdigadir Ahmed Khalif alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and his eventual arrest. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; Robert Roes 1-3, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Khalif's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 47. St. Paul moves on behalf of the City of St. Paul and Robert Roes 1-3 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 45.

The investigation at the core of Khalif's civil complaint primarily targeted a suspected venture involving the sex-trafficking of minor girls. The investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle District of Tennessee in 2010-2011

("Tennessee Case"). Khalif alleges that Weyker fabricated evidence about the fictional sex-trafficking ring throughout the investigation, resulting in a tainted indictment and causing Khalif's arrest and detention. Unlike many of his co-defendants in the Tennessee Case, Khalif was not indicted in any of the sex-trafficking-related charges, only on a fraud-related charge. Moreover, unlike many of his co-defendants, Khalif was not arrested in Fall 2010 after an indictment and a First Superseding Indictment were returned, because he went into hiding until July 2012, when he turned himself in and was released on electronic home monitoring.

Nineteen of Khalif's co-defendants in the Tennessee Case bring separate suits also alleging constitutional violations, and a twenty-first person brings another related civil suit. The parties agreed to coordinated briefing on the Defendants' motions. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here, given the overlap in allegations and arguments. Khalif is represented by the same attorneys as the plaintiff in that case, and their attorneys filed consolidated opposition papers to the Defendants' motions. *See* Osman Pls.' Opp. to St. Paul Mot., Dkt. No. 51; Osman Pls.' Opp. to DOJ Mot. to Dismiss ("Osman DOJ Opp."), Dkt. No. 57.

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants both motions.[1]

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the March 6, 2017 Order Permitting the Osman Plaintiffs to Amend Complaints. Dkt. No. 61. Pursuant to that order, Khalif filed a First Amended Complaint [Dkt. No. 62] ("FAC"), which is thus the operative complaint subject to these Rule 12 motions.

2

judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

### III. ALLEGATIONS

Many of Khalif's allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in Khalif's First Amended Complaint and facts from the Tennessee Case record documents.[2]

On October 20, 2010, an Indictment was filed in the Tennessee Case, charging Khalif with two counts. Count 18 charged Khalif with violating 18 U.S.C. §§ 1029(a)(1)-(a)(3) by conspiring to commit credit card fraud from around 2007 through September 2010. Indictment ("Ind't"), *United States v. Khalif*, No. 3:10cr260, Dkt. No. 3 ¶¶ 117-50 (M.D. Tenn. Oct. 20, 2010); *see also* FAC ¶ 12. Count 19 charged him with violating 18 U.S.C. §§ 1512(c)(1) and 1512(b)(3) by conspiring to destroy evidence in connection with the acts alleged as to Count 18. Ind't ¶¶ 151-53.

In November 2010, a First Superseding Indictment was filed in the Tennessee Case, after which many of Khalif's co-defendants were arrested. *See* FAC ¶ 13. Because Khalif "was not present in Minnesota at the time the sex-trafficking arrests were being conducted," FAC ¶ 15, "knew that the sex-trafficking charges and the overarching allegation of massive conspiracy were

---

[2] Documents on the Tennessee Case public docket, including the indictment, are a matter of public record, and the Court may take judicial notice of them. *Greenman*, 787 F.3d at 887.

3

false," FAC ¶ 16, and "was concerned that his portrayed connection to the sex-trafficking ring could create a possibility of detention," he "did not turn himself in to authorities immediately," FAC ¶ 18. Instead, he went into hiding for approximately 20 months. FAC ¶ 38.

Nine of Khalif's co-defendants in the Tennessee Case eventually went to trial on four sex-trafficking-related charges in a Second Superseding Indictment, none of which were counts in which Khalif was named. FAC ¶ 36; *see also United States v. Adan*, 913 F. Supp. 2d 555 (M.D. Tenn. 2012). The Second Superseding Indictment, like the previous indictments, charged Khalif in Counts 18 and 19. *See* DOJ Br. Ex. B, Dkt. No. 42-1. In May 2012, the jury acquitted six defendants of all charges on which they were tried, and post-trial, the district court granted the other three defendants' Federal Rule of Criminal Procedure 29 motions on the basis of a variance. FAC ¶ 37; *see also Adan*, 913 F. Supp. 2d at 560, 579.

The jury's acquittals prompted Khalif to turn himself in on July 10, 2012. FAC ¶ 38. "Likely due to the trial revelations (*i.e.*, that Weyker had fabricated evidence and that the witnesses were unworthy of belief)," the district court "did not retain Khalif in in-custody detention" and instead released him to electronic home monitoring in Minnesota. FAC ¶ 39.

Nearly three years later, on March 2, 2016, the Sixth Circuit Court of Appeals affirmed the district court's grant of the Rule 29 motions. *United States v. Fahra*, 643 F.3d Appx. 480 (6th Cir. 2016); *see also* FAC ¶ 40. On March 10, 2016, all remaining charges against Khalif and his alleged co-conspirators were dismissed, and he was removed from home monitoring. FAC ¶ 50.

Like Osman, Khalif alleges that the charges of a widespread sex-trafficking conspiracy were baseless, FAC ¶ 23, and that Weyker, who was the lead investigator on the case, FAC ¶ 25, fabricated "the overwhelming majority of the critical evidence supporting the indictments in this

4

alleged conspiracy," FAC ¶ 24; that Weyker manipulated and coerced Jane Doe witnesses into lying, FAC ¶¶ 31-32; that Weyker was motivated to falsify evidence by a desire for glory, FAC ¶ 1; that Weyker "worked with almost no supervision by her employer and principal" the St. Paul Police Department, FAC ¶ 34; and that indications of Weyker's fabrication included her rough notes, questions surrounding Jane Doe Two's age and her trip to Nashville in April 2009, the results of the Spring 2012 trial, and remarks about Weyker and the case by the district and appellate courts in the Tennessee Case, *e.g.*, FAC ¶¶ 28-29, 32, 37, 40-42, 45. Many of these allegations are identical to Osman's.

## IV. SUMMARY OF ARGUMENTS

A summary of the parties' arguments on these consolidated motions is included in the Osman Opinion at pages 8-10.

## V. LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Khalif's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. Khalif's complaint is that "[b]ut for the evidence Weyker fabricated, no probable cause existed to detain or otherwise restrict [his] liberty." FAC ¶ 1. In other words, his complaint is "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* Thus, the Court must decide whether Khalif plausibly alleges that the Defendants violated his right to be free from unreasonable

5

seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.[3]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman*, 787 F.3d at 888 (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (citation omitted).

### a. Analysis of Khalif's Claim Under the Fourth Amendment

In considering whether Khalif plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts

---

[3] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Khalif's claim should have been brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

them as true, and applies its judicial experience and common sense. *See Iqbal*, 556 U.S. at 678-79. The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Like Osman, Khalif alleges that Weyker manipulated witnesses and fabricated evidence to build the case for a sex-trafficking conspiracy. As noted above, many of the facts that Khalif pleads in support of this allegation are exactly the same as Osman's allegations. In the Osman Opinion, the Court discusses in detail the allegations about Weyker's alleged fabrication of evidence in support of the sex-trafficking-conspiracy-related charges. *See* Osman Op. 25-33. It is unnecessary to recount or analyze them here, however, because Khalif was not charged with any sex-trafficking-conspiracy-related charges.

Rather, Khalif was indicted only in credit-card-conspiracy-related charges, and he nowhere alleges that there was not probable cause to indict or arrest him on those charges. He alleges that "Weyker's fabrication of evidence . . . caused Khalif to be wrongfully arrested, indicted, detained, and restricted to home monitoring in violation of his clearly established and well-settled Fourth Amendment rights." FAC ¶ 60. He also alleges that he "would never have been indicted on any charge were it not for Weyker's fabrications." FAC ¶ 51. These allegations are naked assertions not entitled to the assumption of truth and do not plausibly state a claim for relief. *See Iqbal*, 556 U.S. at 678. The indictment includes some particular allegations regarding Khalif in Counts 18 and 19. *See* Ind't ¶¶ 143-44. It alleges that in March 2010, at the instruction of a co-defendant, Khalif went to a particular location and "clear[ed] the whole place," and that on another occasion, at the instruction of a different co-defendant, Khalif warned someone else not to speak to the police about that co-defendant. *Id*. Khalif does not contest these specific allegations, nor even generally aver that he has never played any part in a

7

credit card fraud scheme. The grand jury's indictment of him in Counts 18 and 19 "conclusively determines the existence of probable cause" on those counts, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any plausible allegations that the indictments on those counts were tainted by fabrication of evidence.[4] Further, in a criminal case as lengthy and complicated as the Tennessee Case, it is not reasonable to assume from the Government's eventual dismissal of all charges, after an appeals court affirmed the grant of the Rule 29 motions on the basis of a variance, that there was never probable cause to support *any* of the charges.

In the absence of any well-pleaded allegations that there was no probable or arguable probable cause to arrest Khalif on Counts 18 and 19, his Fourth Amendment claim must fail. *See, e.g.*, *Greenman v. Jessen*, 787 F.3d 882, 889 (8th Cir. 2015) (affirming dismissal of Fourth Amendment claims on qualified immunity grounds where there was probable cause to arrest for violation of some law). He has failed to plausibly allege a constitutional violation, and Defendant Weyker is entitled to qualified immunity.

### b. Supervisory Liability

Khalif sues Bandemer and Robert Roes 1-3 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to but not direct participants in Weyker's alleged violations. Given the Court's conclusion that Khalif has not adequately alleged a constitutional violation by Weyker, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

---

[4] The Court further notes that at least one of his co-defendants pleaded guilty to the credit-card conspiracy charged in Count 18. *See United States v. Nur*, No. 3:10cr260, Dkt. No. 2870 (M.D. Tenn. Oct. 5, 2012).

In addition, Khalif's supervisory allegations are essentially identical to those alleged by Osman and are inadequate for the same reasons. *See* Osman Op. 37-41.

The allegations fail to state a claim for supervisory liability, and Bandemer and Robert Roes 1-3 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Khalif sues St. Paul as well as Bandemer and the Robert Roes in their official capacities for municipal liability under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). "Misconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). "In addition, the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct.'" *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002).

Khalif alleges that Weyker acted alone, with little supervision. *See, e.g.*, FAC ¶ 34. He does not allege facts to support conclusory allegations that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations. For the same reasons given in the Osman Opinion, *see* Osman Op. 41-42, Khalif's municipal liability allegations also fail.

**VI.     Conclusion**

Defendants are entitled to qualified immunity on all counts, because Khalif's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010). The Court will not grant leave to amend based on a request made in passing at the end of a brief without complying with local rules or in any way indicating what changes might be made. *See In re Baycol Prod. Litig.*, 732 F.3d 869, 880 n.8 (8th Cir. 2013).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 47] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 45] is GRANTED.

3. Plaintiff Abdigadir Ahmed Khalif's First Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017                              s/ Joan N. Ericksen
                                                   JOAN N. ERICKSEN
                                                   United States District Judge